# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

RONALD PASQUALETTO,               )   No. ED CV 05-00734-VBK
                                  )
                  Plaintiff,      )   MEMORANDUM OPINION
                                  )   AND ORDER
     v.                           )
                                  )   (Social Security Case)
JO ANNE B. BARNHART,              )
Commissioner of Social            )
Security,                         )
                                  )
                  Defendant.      )
_____  )

     This matter is before the Court for review of the decision by the
Commissioner of Social Security denying Plaintiff's application for
disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have
consented that the case may be handled by the Magistrate Judge.  The
action arises under 42 U.S.C. §405(g), which authorizes the Court to
enter judgment upon the pleadings and transcript of the record before
the Commissioner ("AR").  The parties have filed their pleadings and
supporting memoranda, and the Commissioner has filed the certified AR.
After reviewing the matter, the Court concludes that the decision of
the Commissioner must be reversed and the matter remanded for further
hearing.

1    Plaintiff raises two issues in the Joint Stipulation ("JS").  The
2    second issue asserts error in the ALJ's assessment of Plaintiff's
3    credibility with regard to subjective pain complaints.  That issue has
4    merit, and forms the basis for this Court's determination that the
5    matter must be remanded for further hearing.

6    The records reflect that Plaintiff received ongoing and extensive
7    treatment at the VA Loma Linda facility from approximately August 13,
8    2003 through at least July 15, 2004. (AR 239-291.)  As would be
9    expected, Plaintiff received treatment from various physicians.  One
10   of those physicians was Dr. Joanie K. Bischoff, who also wrote an
11   evaluative letter at the request of Plaintiff's counsel. (AR 229-230.)
12   As the parties do not include a substantial medical history in the JS,
13   the Court will summarize extensively from this letter.  From April of
14   2000 through the date of the letter, Plaintiff was seen by primary
15   care providers nine times and also by orthopedics and pain clinic for
16   evaluation and treatment of his back pain.  Dr. Bischoff acknowledged
17   that she herself had treated Plaintiff twice, and that her narrative
18   constituted "a summary of a number of sources that have seen him
19   (including myself)." (AR 229.)  She noted the following from the
20   records:

21       "[Plaintiff] has a history of low back pain since 1977
22       after an injury.  He has undergone 5 back surgeries from
23       1982-97 including an L4-L5 laminectomy.  MRI done 3-23-01
24       showed in summary: Status post L4 and L5 laminectomy and
25       posterior bony fusion with epidural scarring.  Severe
26       degenerative disc disease at L4-L5 disc.  There is no
27       evidence of disc protrusion or spinal stenosis.  He lives
28       with daily low back pain and bilateral lower extremity

1    (right>left) pain.

2         An orthopedic surgeon evaluated him in October 2001

3    summarizing his situation as chronic low back pain secondary

4    to epidural scarring and stated that he cannot work due to

5    his pain.

6         Pain clinic evaluated this gentleman in 2002 and

7    treated him for failed back surgery syndrome.  He received

8    4 caudal ESI injections in 2002 with no permanent relief.

9    In May of 2003 the pain clinic stated that he has tried and

10   failed all conservative and invasive measures.

11        [Plaintiff] cannot drive a car without pain.  Can walk

12   30-40 feet without pain.  He has a difficult time sleeping

13   secondary to back pain.  He cannot clean the house or

14   accomplish ADL's [activities of daily living] without pain.

15        Treatment has included medication of Vicodin, Tylenol

16   #3 and now on Morphine for the pain.  The Morphine helps

17   only to lower the pain level but not relieve it completely.

18   He has used Gabapentin, Amitriptyline, Naproxyn, and

19   Cyclobenzaprine.  He has been treated with a TENS unit (mild

20   improvement), PT (no improvement) and has had epidural

21   injections of steroids.  He uses a back brace at this time

22   and needs a chair lift to raise from a chair."

23   (AR 229-230.)

24

25        Neither the ALJ or the Commissioner in this litigation contradict

26   the accuracy of Dr. Bischoff's summary.  Indeed, the records clearly

27   demonstrate that Plaintiff often visited the VA facility, and was

28   treated for pain.  The list of his medications throughout this period

1   of time is, to say the least, extensive, and includes Morphine. (See
2   AR at 199, reflecting the period of May 12, 2003, for example.)   An
3   objective review of these records would indicate that there was no
4   improvement over time with regard to pain symptoms, and Dr. Bischoff
5   concluded as much in her letter, stating, in pertinent part,
6   "[Plaintiff] will continue to live with this pain since all the
7   specialists have exhausted all conservative and invasive measures. He
8   [sic] condition will remain the same for his life or worsen over
9   time." (AR at 230.)

10      Plaintiff's testimony at the hearing was consistent with these
11  medical records, and has been adequately summarized by the parties.
12  (See, JS at 3-4.)

13      Plaintiff received a consultative orthopedic evaluation from Dr.
14  Yu on May 2, 2004.  With regard to the area of "station and gait," Dr.
15  Yu reported, "the [Plaintiff] walks with a slight limp on the right
16  side.  He cannot heel or toe walk on the right, but can on  the left
17  side with moderate difficulty." (AR 232.)   These observations would
18  seem to be consistent with a physical condition which could well cause
19  chronic and severe pain.   While Dr. Yu found that the straight leg
20  raising test was positive for back pain, but not radicular pain,  the
21  doctor did not opine that Plaintiff was without radicular pain.   In
22  fact, the conditions accepted as severe by the ALJ are consistent with
23  severe back pain, and include degenerative lumbar disc disease, status
24  post operative, with failed back syndrome. (AR 12.)   There is
25  absolutely no evidence in the record that Plaintiff has on any
26  occasion malingered or exaggerated his symptoms.   In fact, he has
27  endured significant and possibly risky procedures, such as epidural
28  injections, in an attempt to relieve his pain.

4

These observations of the record must be taken in context with the decision, which gives short shrift to Plaintiff's pain complaints. In fact, there are but two reasons set forth in the decision which can be seen as constituting a basis in fact for the ALJ to discard Plaintiff's pain complaints. The first is that Plaintiff basically denied any productive activity and failed to detail his activities of daily life, asserting that he spent all day lying down. (AR at 12.) As Plaintiff correctly points out in the JS, this was not his testimony. What Plaintiff did testify to was that he spends about 75 percent of his day either lying down or in his recliner due to his symptoms. (AR at 329.)  In any event, whether it is "all day" or 75 percent of the day, the ALJ gives no reason to discredit this testimony, based on the evidence in the record.

The second reason which the ALJ sets forth is that Plaintiff can drive a car and appears to be able to drive 60 miles to the VA hospital in Loma Linda as well as approximately 50 miles to the hearing site for the Social Security hearing, in San Bernardino, California. (AR 12.)  Selecting this factor as a basis for assessment of credibility is mystifying. More importantly, the ALJ would be appearing to create new law, since his reliance on the fact that Plaintiff can drive a car goes directly against the teachings of the Ninth Circuit, as set forth in <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001).  Plaintiff need not be in a vegetative condition or utterly incapacitated in order to establish that he suffers from pain which is disabling or which contributes to actual disability. The ALJ fails to suggest how, given his apparently limited financial resources, Plaintiff was supposed to travel to the VA for treatment, if not in his vehicle.  Plaintiff explained to his physicians that

when he is relatively non-ambulatory, his pain medication works well and the pain is tolerable. But as he also explained to his physicians, any activity, such as cleaning the house, driving in a car, or other similar activities, causes a recurrence of the pain. (AR 198.)

The ALJ must engage in a credibility analysis supported by sufficiently specific findings to justify a conclusion which would discredit pain testimony.  In particular, the ALJ must offer specific, clear and convincing reasons.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).  That clearly did not occur in this case.

The Court, moreover, is concerned about the tone and content of the ALJ's decision, with regard to the existence of a neutral credibility analysis.  In particular, the ALJ virtually attacks Dr. Bischoff as being unqualified, and cites portions of the record in which, the ALJ claims, Dr. Bischoff acknowledged that she was unqualified. (AR at 13.)  A review of those documents, however, indicates no such thing. On each occasion referenced by the ALJ, Dr. Bischoff expressed her concern that a particular form with which she had been provided appeared to call for the expertise of an orthopedist. ("PT left off form to be filled out by an orthopedic MD - I am not orthopedic and if I am the only one to fill it out.  I will need to send to the VA attorney to see who would fill this out.") (AR 268.)  In the other reference to the record made by the ALJ, Dr. Bischoff again, noted that a particular form would appear to need to be filled out by an orthopedist.  She approached the issue carefully, writing, "I spoke to our attorney - this form is for a qualified specialist to fill out. I do not have those qualifications.  <u>I am not</u> <u>an expert in the area that is in question.</u>  The VA clinic is for health care.  I cannot give expert opinion." (AR 288, emphasis added.)

6

1   What is significant is that the lack of qualifications referenced by
2   the ALJ in the decision has nothing to do with Dr. Bischoff's ability
3   to assess Plaintiff's pain.   They have to do with whether Dr.
4   Bischoff, not being an orthopedist, can fill out a form which would
5   appear to be directed to a medical specialist, that is, an
6   orthopedist.

7        The ALJ also made reference to a "compassionate VA stipend" in
8   his decision. (AR 313.)   This would appear to have no relevance
9   whatsoever to anything brought before the ALJ, and is especially of
10  concern considering the ALJ's comments that this stipend "compares
11  most favorably as tax free income with any year to which he has ever
12  posted earnings." (Id.)

13       The inadequacy of the credibility assessment in this matter,
14  especially considering that this case was remanded by the Appeals
15  Council for a second hearing, combined with the referenced comments in
16  the decision, lead the Court to conclude that this is a rare case
17  which, on remand, must be assigned to a new ALJ.   A proper and
18  specific credibility assessment must be performed.

19       The Court will only briefly address Plaintiff's first issue,
20  which is that the ALJ failed to properly consider the functional
21  impact of Plaintiff's obesity.   The Court considers Plaintiff's issue
22  to be foreclosed by the Ninth Circuit's decision in Burch v. Barnhart,
23  400 F.3d 676 (9th Cir. 2005).   In this case, the ALJ did adequately
24  review Plaintiff's functional ability, and as Plaintiff concedes, the
25  evaluating physicians were aware of Plaintiff's obesity.   It is
26  Plaintiff's burden to point to evidence of additional functional
27  limitations due to obesity, and Plaintiff has failed to do that.   For
28  these reasons, Plaintiff's first issue does not establish a basis for

1 | reversal of the decision.

2 |      For the reasons set forth in this Opinion, this matter will be

3 | remanded for a new hearing before a new ALJ.  The decision of the

4 | Commissioner is reversed.

5 |      **IT IS SO ORDERED.**

6 |

7 | DATED: May 12, 2006

8 |

9 |                      /s/

10 |                      VICTOR B. KENTON
                     UNITED STATES MAGISTRATE JUDGE